UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ARTHUR K. MCGEE and
RHONDA R. MCGEE                                                                               PLAINTIFFS

V.                                                         CIVIL ACTION NO. 3:14cv523-DPJ-FKB

JP MORGAN CHASE BANK, N.A.; FEDERAL
NATIONAL MORTGAGE ASSOCIATION; JOHNSON
FREEDMAN, LLC; CHRISTOPHER A. COLLINS, ESQ.;
and JOHN/JANE DOES 1 5                                                                       DEFENDANTS

ORDER

This mortgage-loan dispute is before the Court on Defendant Johnson Freedman, LLC's ("J&F") Motion for Summary Judgment [69] pursuant to Federal Rule of Civil Procedure 56. The Court has considered the parties' submissions, and though the alleged conduct seems egregious, Plaintiffs have not linked it to J&F. The Motion is therefore granted for the reasons set forth in this Order.

I.      Facts and Procedural History

The general facts are documented in the Court's December 3, 2014 Order [46] granting Defendant JP Morgan Chase Bank's Motion to Dismiss and are incorporated herein by reference. *McGee v. JPMorgan Chase Bank, N.A.*, No. 3:14cv523 DPJ FKB, 2014 WL 6871270, at *1 (S.D. Miss. Dec. 3, 2014). That said, certain more particularized facts have now become relevant and will be addressed.

In February 2005, Plaintiffs Arthur K. McGee and Rhonda R. McGee signed a promissory note and deed of trust on their home; JP Morgan Chase ("Chase") assumed the loan in 2006. Compl. [3-1] ¶¶ 10 11. In June 2010, the McGees submitted a request for loan

modification under the Home Affordable Modification Program ("HAMP"). *Id.* ¶ 13. Although Chase acknowledged this request, their home was scheduled for a foreclosure sale on July 7, 2010. *Id.* ¶¶ 14 15. Chase also indicated that the matter was being handled by J&F. McGee Dep. [73-2] at 19, 32. On July 6, Rhonda McGee spoke with Laquenia Trezevant, who McGee believed to be employed by Nationwide Trustee Services, Inc., the substitute trustee. McGee Dep. [73-2] at 27 28. Trezevant confirmed that "the foreclosure was postponed." *Id.* ¶ 18. Yet on July 7, Christopher Collins, an agent of J&F, sold the McGees' home at a foreclosure sale to Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶ 19. The McGees believe J&F is responsible for Trezevant's misrepresentation.

When Defendants refused to rescind the sale, the McGees filed suit in state court, claiming, among other things, that they relied on Trezevant's representations and therefore did not take steps to prevent foreclosure. *Id.* ¶ 21. JP Morgan Chase removed the case to this Court and filed a Motion to Dismiss [32], which the Court granted on December 3, 2014. All defendants other than J&F have been dismissed, and J&F now seeks summary judgment [69] claiming that it has no responsibility for Trezevant's alleged breach. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III. Analysis

At the outset, it is necessary to clarify which claims remain operative as against J&F. Although Plaintiffs initially pleaded at least six separate claims, their Response to the instant Motion specifically abandons the claims for wrongful foreclosure, fraudulent misrepresentation, and intentional infliction of emotional distress as to J&F. Pls.' Resp. [74] at 2 n.1. Furthermore, the Response only substantively addresses the negligent-misrepresentation claim and contains no argument or reference to record evidence to refute a simple negligence claim. Consequently, the

Court assumes that Plaintiffs have abandoned all claims against J&F other than their negligent-misrepresentation claim and have chosen to proceed solely on that ground.

In their Complaint, the McGees aver that J&F, through Trezevant, represented that the foreclosure sale had been postponed when it knew or should have known that it had not been. Compl. [3-1] ¶ 24. To establish a claim for negligent misrepresentation under Mississippi law, a plaintiff is required to prove the following elements:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 793 (S.D. Miss. 2014) (citing *Hazlehurst Lumber Co. v. Miss. Forestry Comm'n*, 983 So. 2d 309, 313 (Miss. 2008)). "This rule permits parties who are foreseeable recipients of a professional opinion and who detrimentally rely on that opinion in their business affairs to recover *from the person offering the opinion*." *Strickland v. Rossini*, 589 So. 2d 1268, 1277 (Miss. 1991) (emphasis added).

J&F contends that summary judgment is appropriate as to this claim because the McGees "have failed to identify J&F as the entity responsible for making a representation to them and failed to provide factual evidence of . . . negligence on J&F's behalf." Def.'s Mem. [70] at 6. In support of this argument, J&F relies primarily on affidavits from Joel Freedman, J&F's Managing Partner, and LaQuenia Thompson (formerly LaQuenia Trezevant) stating that at all times relevant to this litigation, Trezevant was employed by Prommis Solutions, LLC ("Prommis") and not J&F. *See* Def.'s Mem. [70-1], Ex. A ¶ 9 10; Def.'s Mem. [70-3], Ex. C ¶

2. Prommis was the parent corporation for Nationwide, the entity Chase Bank designated as the substitute trustee. *See* Def.'s Mem. [70-1], Ex. A ¶ 9; Def.'s Rep. [75-1], Ex. D.

The McGees essentially concede that Trezevant was technically employed by Prommis at all relevant times. So they argue instead that "under the general rules of agency law, J&F is liable for the admitted misrepresentation made by its out-sourced paralegal who had apparent authority to act on behalf of J&F." Pls.' Resp. [74] at 7.

Under Mississippi law, "a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990). More specifically, "a principal is liable for the misrepresentations or frauds of his agent so long as the agent was acting within the scope of his authority, even if the principal had no knowledge thereof and did not benefit therefrom." *Christian Methodist Episcopal Church v. S & S Constr. Co., Inc.*, 615 So. 2d 568, 572 73 (Miss. 1993) (citing *Andrew Jackson*, 556 So. 2d at 1180). Thus, the ultimate question for the Court is whether the McGees have created a material question of fact regarding Trezevant's apparent authority to act for J&F. The Court finds that Plaintiffs have not met that burden.

Whether or not an agent possesses apparent authority turns on the reasonable expectations of the party transacting with the agent it exists when "a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987) (citations omitted). Thus, to recover under a theory of apparent authority, a plaintiff must show the following: "(1) acts or conduct on the part of the principal indicating the agent's authority, (2)

5

reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Andrew Jackson*, 566 So. 2d at 1180(citations omitted).

The McGees contend that three categories of acts by J&F create a question of fact as to whether Trezevant acted with apparent authority from J&F: (1) they received correspondence on J&F letterhead; (2) Trezevant worked for J&F at some point and has always worked at the same location; and (3) another Prommis paralegal, Lisa Payne, testified regarding J&F's oversight of Prommis employees. *See* Pls.' Resp. [74] at 8 9.[1]

Starting with the letterhead issue, Plaintiffs more particularly claim that "[a]ll correspondence received by the McGees relating to the foreclosure sale *and* subsequent eviction proceeding was printed on J&F letterhead and signed by one or more of the outsourced paralegals." *Id.* at 8 (emphasis added). While there is no dispute that the eviction correspondence was on J&F letterhead, the same is not true with respect to the pre-foreclosure correspondence.

According to the McGees, Trezevant's deposition testimony proves that she "used J&F letterhead to communicate *with borrowers*." *Id.* at 9 (citing Trezevant Dep. [73-1] at 17 (emphasis added)). Obviously, this generic statement does not establish that Trezevant sent the McGees any letters on J&F letterhead. More significantly, Trezevant was testifying about practices she followed while "employed at Johnson & Freedman," Trezevant Dep. [73-1] at 17, not while employed at Prommis. Indeed, the only pre-foreclosure letters the McGees attach to the summary-judgment record were both written by Trezevant on Nationwide letterhead. *See*

---

[1] It should be noted that the McGees do not attempt an alter-ego argument. Thus, the facts must be evaluated with respect to their apparent-authority argument.

Corr. [73-5] at 2 3. And both letters reflect that they were written for "Prommis Solutions, LLC on behalf of Nationwide Trustee Services, Inc." *Id.* The McGees have not offered evidence showing they received correspondence from Trezevant or anyone else on J&F letterhead regarding the foreclosure. Thus, the letters provide no evidence of an act or conduct by J&F from which the McGees could have reasonably believed Trezevant was J&F's agent. *Andrew Jackson*, 566 So. 2d at 1180.

The McGees next argue that Trezevant worked for various employers with some connection to J&F and actually worked for J&F before her employment with Prommis. Pls.' Resp. [74] at 8 9. All of these jobs were at "the same physical location as J&F's office." *Id.* at 9. Accepting all this as true does not change the fact that neither Trezevant nor any other paralegal the McGees communicated with before the foreclosure were employed by J&F at that time. Moreover, Trezevant's work history fails to show that J&F held her out as its agent during the time she communicated with the McGees. Instead, as stated above, the correspondence indicated that Trezevant wrote on behalf of Prommis and Nationwide. *See* Corr. [73-5] at 2 3.

Finally, the McGees cite the deposition testimony of another Prommis paralegal, Lisa Payne. *See* Pls.' Resp. [74] at 9. Like Trezevant, Payne was employed by Prommis but worked in J&F's offices. *Id.* She also testified that she had authorization to use J&F letterhead and received supervision from J&F attorneys who maintained Prommis files. *Id.* at 9 10. Indeed she apparently wrote the McGees about the eviction proceedings over J&F letterhead. *See* Freedman Dep. [73-3] at 22.

Assuming again that these facts are true, the McGees still fall short. Significantly, Payne never communicated with the McGees before the foreclosure. Pls.' Resp. [74] at 9. According

to Payne, she handled eviction matters, Def.'s Mem. [70-3], Ex. C ¶ 3, and it was in this capacity that she contacted the McGees after the eviction went into litigation. *Id.* ¶ 5; *see also* Freedman Dep. [73-3] at 22. None of this shows that J&F held Trezevant out as its agent before the McGees detrimentally relied on her misstatement. Nor, for that matter, does it show reasonable reliance on such acts or conduct. *Andrew Jackson*, 566 So. 2d at 1180.

Finally, and perhaps most importantly, Rhonda McGee admitted in her deposition testimony that she knew Trezevant was not a J&F employee. McGee Dep. [73-2] at 27 28 ("I thought she was an employee of Nationwide Mortgages."). Accepting this as true, the McGees could not have justifiably believed that Trezevant had authority to act on J&F's behalf at the time of the alleged misrepresentation.[2]

For these reasons, the Court finds that the record evidence is insufficient to establish J&F's responsibility for the alleged misrepresentation or omission made in anticipation of the foreclosure sale. As such, it is unnecessary to determine whether the McGees have identified sufficient facts as to the remaining elements of the negligent-misrepresentation claim. Although the Court sympathizes with the hardship the McGees have faced due to the alleged neglect, the law will not sanction recovery against this particular Defendant. The Motion is granted.

IV.     Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant J&F's Motion for

---

[2]Trezevant is the only person the McGees directly address in their agency argument. That said, they do at one point state that their communications were "primarily" with Trezevant. The McGees have not directed the Court to any record evidence of acts or conduct by J&F indicating that anyone else may have been its agent when the alleged misrepresentation occurred.

Summary Judgment [69] is granted.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 12th day of November, 2015.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE